**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00767 CDP |
| | ) | |
| ST. LOUIS CITY JUSTICE CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is self-represented Plaintiff James Hudson's Application to Proceed in District Court Without Prepaying Fees or Costs. [ECF No. 1]. Having reviewed the Application and the financial information provided, the Court will assess an initial partial filing fee of $3.80 and will dismiss this action without prejudice.

**28 U.S.C. § 1915(B)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. District courts "shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee" of 20% of the greater of the average monthly deposits to the prisoner's account and the average monthly balance in the prisoner's account for the prior six-month period. 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20% of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward the monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id*.

Plaintiff is a prisoner at St. Louis City Justice Center in St. Louis, Missouri. In support of his Application to Proceed in District Court Without Prepaying Fees or Costs, Plaintiff submitted

an inmate account statement showing average monthly deposits of $19.00. [ECF. No. 7]. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $3.80. *See* 28 U.S.C. § 1915(b)(1).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. §1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282,

1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is currently confined in the St. Louis City Justice Center in St. Louis City, Missouri. [ECF No. 1]. The allegations in his Complaint relate to an incident that occurred in August of 2025. *Id*. at 3. Plaintiff was placed in solitary confinement at the Justice Center on or about August 28, 2025, due to an alleged attack on a Correctional Officer. [ECF No. 1-1 at 1-2]. He was placed in cell 4B, Fourth Floor, Bravo Unit. [ECF No. 1 at 3]. He claims that "at that time there were [sic] poop & urine throwing in there." *See id*. Plaintiff alleges that due to the conditions, he sought cleaning supplies from unnamed persons at the Justice Center, but "they told me it was a safety issue but never let me clean no day soon."[1] *See id*.

Plaintiff states that he was incarcerated in cell 4B solitary for 10 days. [ECF No. 1-1 at 1]. After several days in solitary, Plaintiff began to feel ill. [ECF No. 1 at 3]. He asserts that he had constipation, blurred vision, and cotton mouth. *Id.* He states that he also started waking up with mouth sores and swollen skin. [ECF No. 1-1 at 2]. This concerned him because due to prior surgery from a gunshot wound in 2023, Plaintiff lacked a spleen. [ECF No. 1-1 at 1]. On or about September 1, 2025, Plaintiff asked to be taken to medical. Lieutenant Boarders, who was passing out breakfast, took Plaintiff to medical services that day. *Id*.

---

[1] Plaintiff has not alleged exactly how long he was subject to these conditions, or if they were directed at him, within his cell, or simply in a common area within the disciplinary confinement pod.

Plaintiff was evaluated by Nurse Grey in medical, who allegedly told him that he had nothing wrong with him, and he was taken back to his cell in 4B. *Id*. Plaintiff called both his mother and his lawyer to report his purported illness, and his mother called the oversight person at the Justice Center, Mrs. Baker. *Id*. Plaintiff does not indicate if anything occurred relative to these complaints.

Plaintiff was removed from solitary confinement on September 8, 2025; however, he asserts that he was still having medical symptoms, so he continued to turn in health service requests. *Id*. He specifically asked to see Nurse Practitioner Barnes at the Justice Center, as he believed she understood his past medical and mental health issues. [ECF No. 1-1 at 3]. Plaintiff reports that he suffered from Bi-Polar Disorder and severe anxiety, along with his other chronic medical problems. Although he saw medical several times during the month of September, he was told that nothing could be done about his purported chronic pain, which Plaintiff describes as mostly a fear of getting ill. *Id*.

After being placed back in solitary confinement at the end of September due to a disciplinary issue, Plaintiff had increasing difficulty with his mental health. *Id*. He claims that his mental health was exacerbated by his feeling that something was wrong with his medical condition. *Id.* Plaintiff states that while in solitary, the "mental health lady" came to see him often, but that failed to help him. It was his belief that mental health assistance failed to help because he was having chronic pain and because he was worried about having possibly contracted an infection from his August stay in solitary confinement. [ECF No. 1-1 at 4].

On an undisclosed date in October of 2025, Plaintiff got so agitated that he yelled at the top of his lungs to several correctional officers that he was mentally and physically unstable and needed to see medical. *Id*. Both medical and mental health professionals were called to see

Plaintiff. *Id*. Plaintiff claims that an unnamed nurse practitioner gave him an antibiotic and drew his blood. She told Plaintiff that he would be seen again in a few days. *Id*. According to Plaintiff, the nurse told Correctional Officer Hyland that she feared for Plaintiff's health while he was in solitary confinement, but Hyland said he was unable to do anything about removing Plaintiff from solitary. *Id*. Plaintiff does not indicate why the nurse allegedly feared for his health.

Plaintiff reports that at this time, his skin was swollen, his lungs "sounded horrible," and he had bumps inside his mouth. [ECF No. 1-1 at 5]. After he completed the antibiotic, he did not go back to medical for a follow-up, despite telling Nurse Grey about his ongoing symptoms. *Id*.

Approximately two months later, in December of 2025, Plaintiff was placed in cell 4A in general population. *Id*. Although he was still having medical symptoms, he wanted to wait for a few weeks to see if his symptoms improved outside of solitary confinement. [ECF No. 1-1 at 6]. Plaintiff does not indicate how long he waited, but he states that he "flipped out 1 morning, [and] had a (code 3)."[2] *Id.* Corrections officers at the Justice Center called medical to let them know that it was an emergency due to Plaintiff panicking. *Id*. He complains that his face was swollen and his "body was numb." *Id.* Plaintiff states that it was his "mental reacting on [his] physical because PTSD." *Id*. He alleges that "Nurse B" said that his hands and face were swollen. *Id*. Nevertheless, the nurses wanted to place him on a list to see the doctor and send him back to his cell. *Id*. Plaintiff told the nurses in the medical unit that if he wished to go back to his cell to die like the rest of the inmates at the Justice Center, he could just kill himself. [ECF No. 1-1 at 7]. The nurses in the medical unit thought Plaintiff was suicidal, and had correctional officers place Plaintiff on suicide watch. *Id*. Correctional Officers Loper, Damir and Hamilton forcefully took Plaintiff's clothing and placed him in a suicide cell. *Id*.

[2] Plaintiff does not explain the meaning of a Code 3 in the Complaint.

After a few days on close observation status, Plaintiff was transferred back to general population, and approximately one day later, he was seen in medical by Nurse Practitioner Burns. [ECF No. 1-1 at 8]. Plaintiff claims that due to his Bi-Polar disease and difficulties with his health, he broke down in front of Nurse Burns. *Id.* He told her that she had done a bad job keeping up with both his mental and physical health. Plaintiff alleges that she agreed and upped "the doses on meds."[3] *Id*. Burns also ordered Plaintiff a chest x-ray and after checking Plaintiff's mouth, ordered a dental consultation. *Id*. When Plaintiff saw the dentist, she told Plaintiff that it was possible that he was suffering from a fungal infection. *Id.* It appears that Plaintiff was given treatment for this infection after seeing the dentist. *Id.*

Plaintiff states that he had a meeting at the Justice Center with his lawyer in early February of 2026, and it is his belief that he was punished by unnamed correctional officers after his lawyer left the Justice Center. [ECF No. 1-1 at 9]. He states that he was "slammed" and "checked" by correctional officers and then thrown in solitary for "no reason at all." *Id*. Despite these conclusory allegations, Plaintiff has not provided any details in the Complaint as to what exactly occurred relative to these events or who allegedly participated in these events.[4]

Plaintiff alleges that while in solitary, his blood and urine were taken by medical. *Id.* However, he does not indicate what precipitated a nurse to test Plaintiff's blood and urine. Approximately two days later Plaintiff was informed that he tested positive for the Herpes Simplex Virus. *Id*. Plaintiff believes that he was infected with the Herpes Virus from his time in solitary during August of 2025 when he was exposed to blood and urine from other inmates. *Id*.

---

[3] Plaintiff does not indicate what he was being treated for or what medications he was taking. From the facts provided by Plaintiff in his Complaint, he was seen in medical services and by mental health professionals on several different occasions.

[4] To the extent Plaintiff believes he was subject to retaliation, he will need to file a new action alleging these allegations in a non-conclusory manner.

He insists that he has not engaged in risky sexual acts with inmates since he has been incarcerated. *Id.*

Plaintiff seeks damages in this action against the St. Louis City Justice Center. [ECF No. 1 at 6].

**DISCUSSION**

Plaintiff is a self-represented litigant currently incarcerated at St. Louis City Justice Center in St. Louis City, Missouri who brings this civil action pursuant to 42 U.S.C. § 1983. Because he is proceeding in forma pauperis, the Court has reviewed his Complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss Plaintiff's Complaint.

Plaintiff names only one Defendant in this action – the St. Louis City Justice Center, and he sues the Justice Center in its official capacity. Plaintiff's claims against the St. Louis City Justice Center are subject to dismissal because the Justice Center is not a legal entity amenable to suit. *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). *See also Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail,* 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if Plaintiff was attempting to assert a *Monell*[5] violation against St. Louis City, he has not properly alleged an unconstitutional policy or custom. A political subdivision generally cannot be held vicariously liable under 42 U.S.C. § 1983 for unconstitutional acts performed by its employees. *See Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999) (citing

[5] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). A political subdivision can only be held liable under § 1983 if a constitutional violation resulted from an official policy, custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same.

Here, Plaintiff's facts do not point to the existence of any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a Crystal City] governing body" as being at issue in this case. *See Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1546 (8th Cir. 1992). He does not claim that a specific staff member's actions at St. Louis City were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). Plaintiff also has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis City's employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct, as he only alleges one incident on a specific date. *See Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013). Additionally, he has not demonstrated that St. Louis City was deliberately indifferent in failing to train or supervise its employees. That is, he has not shown that St. Louis City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). For these reasons, Plaintiff has failed to state a claim against the Justice Center or St. Louis City. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that

would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

The Court is cognizant that Plaintiff has included a plethora of statements in his Complaint relative to his belief that he contracted Herpes Simplex Virus during his 10-day stay in solitary confinement in August of 2025 when "there were [sic] poop & urine throwing in there."[6] [ECF No. 1 at 3]. As noted above, Plaintiff cannot bring medical claims such as these against the Justice Center. Nonetheless, the Court will address his claims.

Plaintiff admits that correctional officers and medical professionals properly reacted to his physical and mental health needs by providing him treatment between August of 2025 and February of 2026 on numerous occasions. Plaintiff is a pretrial detainee. In general, the Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.,* 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish,* 441 U.S. 520 (1979)). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

---

[6] The majority of medical professionals agree that you cannot be infected by the Herpes Simplex Virus through such means.

To prevail on a deliberate indifference claim, a plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy,* 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.,* 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the effect of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005)). To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in

treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

Even if the Court assumes Plaintiff was suffering from an objectively serious medical need between August 2025 and February of 2025, there is simply no evidence that the Justice Center's correctional officers or medical providers actions were so inappropriate as to evidence intentional mistreatment or a refusal to provide essential care. In fact, from Plaintiff's own telling, each time he complained of issues, whether they were mental health issues or medical issues, he was provided care. Plaintiff may have disagreed with the care he was provided with, but he was provided with some sort of care. As such, the Court cannot find that Justice Center officials acted with deliberate indifference or intentional delay in treating his medical or mental health needs.

The Court finds that Plaintiff's Complaint fails to state a claim upon which can be granted. As a result, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees and Costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall pay an initial filing fee of $3.80 within 30 days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel [ECF No. 3] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith. An Order of Dismissal will accompany this Memorandum and Order.

Dated this 1st day of October, 2026.

Catherine D Perry

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE